**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

1. ALLIE S. TAGHAVI, )
)
Plaintiff, )
)
v. ) Case No. CIV-16- 303-D
)
1. STATE OF OKLAHOMA, ex rel ) JURY TRIAL DEMANDED
OKLAHOMA TAX COMMISSION, ) ATTORNEY'S LIEN CLAIMED
)
Defendant. )

## COMPLAINT

**COMES NOW THE PLAINTIFF,** and hereby pleads her claims as follows:

## PARTIES

1. The Plaintiff is Allie Taghavi, an adult resident of Oklahoma County, Oklahoma.

2. The Defendant is the State of Oklahoma *ex rel* the Oklahoma Tax Commission, a governmental entity operating in Oklahoma County, Oklahoma.

## JURISDICTION AND VENUE

3. Plaintiff's claims are for discrimination on the basis of sex and national origin and retaliation, including termination, for complaining of such discrimination, in violation of Title VII of the Civil Rights Act of 1964 and Oklahoma's Anti-Discrimination Act. Jurisdiction over the federal claims is vested in this Court under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331. The state law claims arise out of the same core of facts, and jurisdiction over them is vested under 28 U.S.C. § 1367(c).

4. Venue is provided by 42 U.S.C. § 2000e-5(f)(3), under which jurisdiction is appropriate in any district in the State. Plaintiff resides within Oklahoma County. Plaintiff worked out of Oklahoma County, Oklahoma, and the Defendant may be

served in that county. Oklahoma County is located in the Western District of the United States District Court of Oklahoma. Wherefore, venue is proper in this Court.

**STATEMENT OF FACTS**

5. Defendant is a governmental entity and is a covered employer under Title VII. There is no minimum number of employees required to be covered by the OADA.

6. Plaintiff Allie Taghavi, a transgendered female, was employed by the Defendant from around October 2014 until her termination on or around June 22, 2015, as a compliance revenue officer.

7. Plaintiff is Middle Eastern by descent, and was raised in Canada prior to moving to the United States.

8. Around December 2014, Plaintiff's acting supervisor, Materso Eisenberger, case manager, told Plaintiff in a hostile manner that she (Ms. Eisenberger) could not understand Plaintiff because she speaks with an accent.

9. Thereafter, Ms. Eisenberger and Plaintiff's supervisor, Sharita Ramsey (supervisor), would require Plaintiff to write things on post-it notes rather than speak. If Plaintiff spoke to her supervisors rather than writing down her statements, her supervisors would ignore her.

10. Plaintiff complained to Tajuana Henderson (Plaintiff's case manager) and Tim Spradlin, administrator, who took no remedial action.

11. In late January 2015, Ms. Henderson made derogatory, gender-related remarks to Plaintiff, including that she was "not even a woman" but was "being more emotional than [Henderson] is about this." Henderson went on to tell Plaintiff to go "get naked and stand in front of the mirror."

12. On or around February 6, 2015, Plaintiff made a verbal complaint of gender

discrimination and national origin discrimination to human resources, including the comments related to Plaintiff's accent and the statements about her gender. In response, human resources referred Plaintiff to Mr. Spradlin to resolve the matter.

13. Mr. Spradlin notified Ms. Eisenberger, Ms. Ramsey, and Ms. Henderson of Plaintiff's complaints. Thereafter, Plaintiff's harassing treatment by her supervisors worsened, occurring on approximately a daily basis. Such treatment included, but is not limited to, Ms. Ramsey isolating Plaintiff in the workplace, throwing papers at the Plaintiff, and writing Plaintiff up for seeking assistance with her job duties.

14. The treatment from Plaintiff's supervisors materially changed the terms and conditions of her employment, creating a hostile working environment on the basis of Plaintiff's gender and/or national origin.

15. In March 2015, in retaliation, Ms. Ramsey placed Plaintiff on a performance improvement plan. The purported reason for the plan was customer complaints, however, Plaintiff was not informed of those complaints, was not given any details of the complaints, nor allowed any opportunity to respond to the complaints.

16. The true purpose of the performance improvement plan was to further discriminate against Plaintiff based on her gender and/or national origin, and/or to retaliate for Plaintiff's complaints.

17. On or around March 31, 2015, Plaintiff requested a transfer of departments due to the harassing treatment; however, Plaintiff was not allowed to transfer.

18. Around April 15, 2015, Plaintiff filed a grievance over the discrimination she was experiencing, explaining she was experiencing harassment, detrimental treatment, fabricated allegations, and intimidations due to her "diverse background," as well as the retaliation she was experiencing.

19. On or around May 14, 2015, Plaintiff was informed that her grievance was denied by Jim Fourcade, Director of Compliance for Defendant. No remedial action was taken as a result of Plaintiff's grievance and the harassment continued.

20. Plaintiff was advised not to appeal the grievance by Missy Cain, grievance manager.

21. Shortly after the expiration of the time for appealing the grievance decision, Plaintiff was terminated from her employment. The stated reason for termination was that Plaintiff was "failing to demonstrate fitness for the position."

22. Such reason is false and pretextual for several reasons, including that Plaintiff performed satisfactorily and that the true reason for the termination was Plaintiff's national origin, gender/status as transgender, and/or retaliation for her opposition to, and complaints of, such discrimination.

23. At the least, motivating factors for Plaintiff's termination were Plaintiff's gender and/or her national origin, and/or her complaints of retaliation. Such factors may also have been significant factors in the termination under Oklahoma's Anti-Discrimination Act.

24. As a direct result of Defendant's actions, Plaintiff has suffered lost wages (including back, present and front pay along with the value of benefits associated with such wages), and dignitary harm/emotional distress including stress, worry, and sadness.

25. Plaintiff has exhausted her administrative remedies by timely filing a charge of discrimination on August 18, 2015. The EEOC issued Plaintiff's right to sue letter on February 29, 2016, and Plaintiff received such letter thereafter. This complaint is timely filed within ninety days of Plaintiff's receipt of her right to sue letter.

26. Discrimination based on gender, national origin, and/or retaliation for complaining

of the same are prohibited by Title VII and by the Oklahoma Anti-Discrimination Act.

27. Under Title VII and the OADA, Plaintiff is entitled to compensation for all lost wages and benefits arising from the termination. Under the OADA, Plaintiff is automatically entitled to recover liquidated damages.

28. Under Title VII, the Plaintiff is also entitled to recover damages for the emotional distress/dignitary harms suffered as a result of such termination.

**PRAYER**

Plaintiff respectfully requests this Court enter judgment in her favor and against the Defendant and grant her all compensatory damages suffered, together with liquidated damages, attorneys' fees, costs and interest, and such other legal and equitable relief as this Court deems just and proper.

**RESPECTFULLY SUBMITTED THIS 1st DAY OF APRIL, 2016.**

HAMMONS, GOWENS, HURST
& ASSOCIATES

s/ Leah M. Roper

Mark E. Hammons, OBA #3784
Amber L. Hurst, OBA # 21231
Leah M. Roper OBA # 32107
HAMMONS, GOWENS & ASSOCIATES
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-6100
Facsimile: (405) 235-6111
Leah@hammonslaw.com
*Counsel for Plaintiff*
JURY TRIAL DEMANDED
ATTORNEY'S LIEN CLAIMED