IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.  ALLIE S. TAGHAVI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-16-303-STE |
| | ) | |
| 1.  STATE OF OKLAHOMA, ex rel | ) | |
|     OKLAHOMA TAX COMMISSION, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPENING MOTION FOR PARTIAL SUMMARY JUDGMENT
AND BRIEF IN SUPPORT**

Lee Pugh, OBA #15829
Marjorie L. Welch, OBA #11007
Mary Ann Roberts, OBA #17405
OKLAHOMA TAX COMMISSION
100 North Broadway Avenue, Suite 1500
Oklahoma City, Oklahoma 73102
Telephone: (405)522-9460
Facsimile: (405)601-7144
maryann.roberts@tax.ok.gov
Counsel for Defendant

January 9, 2017

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 250, 106 S.Ct. 2505 (1986) .................................................................. 6

*Celotex Corp. v. Catrett*,
477 U.S. 317, 322–23, 106 S.Ct. 2548 (1986) ............................................................ 6

*E.E.O.C. v. Wiltel, Inc.*,
81 F.3d 1508, 1514 (10th Cir. 1996) ........................................................................... 9

*Etsitty v. Utah Transit Authority, et al.*,
502 F.3d 1215 (10th Cir. 2007) ................................................................................. 11

*Fath v. Drive Clean Mgmt., LLC*,
121 F. Supp. 3d 1196, 1199 (N.D. Okla. 2015) .......................................................... 6

*Furr v. AT & T Technologies, Inc.*,
824 F.2d 1537, 1547, 1549 (10th Cir. 1987), *reh'g denied*, 842 F.2d 253 (1988) ............. 9

*Geraci v. Moody-Tottrup International, Inc.*,
82 F.3d 578, 581 (3rd Cir. 1996) ............................................................................... 11

*Goldberg v. B. Green & Co.*,
836 F.2d 845 (4th Cir. 1988) ..................................................................................... 10

*Hall v. U.S. Dep't of Labor, Admin. Review Bd.*,
476 F.3d 847, 854 (10th Cir. 2007) ............................................................................. 7

*Heim v. State of Utah*,
8 F.3d 1541, 1546–47 (10th Cir. 1993) ....................................................................... 9

*Kendall v. Watkins*,
998 F.2d 848, 850 (10th Cir. 1993) ............................................................................. 6

*Mackey v. Shalala*,
360 F.3d 463, 469–70 (4th Cir. 2004) ....................................................................... 11

*Macy v. Holder*,
No. 0120120821, 2012 WL 1435995 (E.E.O.C. Apr. 20, 2012) ............................... 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574, 586–87, 106 S.Ct. 1348 (1986) ................................................................ 6

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792, 802, 93 S.Ct. 1817 (1973) ..................................................................... 10

*Perry v. Woodward*,
199 F.3d 1126, 1135 (10th Cir. 1999) ......................................................................... 10

*Ramsey v. City and County of Denver*,
907 F.2d 1004, 1008 (10th Cir. 1990) ........................................................................... 9

*Shorter v. ICG Holdings, Inc.*,
188 F.3d 1204, 1207 (10th Cir. 1999) ........................................................................... 7

## STATUTES

42 U.S.C. § 2000e ................................................................................................... 1, 11

OKLA. STAT. tit. 25, §§ 1101–1706 ............................................................................. 1

## OTHER

Fed. R. Civ. Proc. 56(c) ............................................................................................ 1, 6

OKLA. ADMIN. CODE § 455:10-1-1 et seq. ............................................................ 2, 4

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.   ALLIE S. TAGHAVI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-16-303-STE |
| | ) | |
| 1.   STATE OF OKLAHOMA, ex rel OKLAHOMA TAX COMMISSION, | ) ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S OPENING MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT

COMES NOW, the Defendant, State of Oklahoma, ex rel., Oklahoma Tax Commission, and files its Motion for Partial Summary Judgment pursuant to Fed. R. Civ. P. 56(c). In support of its motion, Defendant respectfully submits the following:

### INTRODUCTION

Plaintiff filed an action claiming discrimination on the basis of sex and national origin, and retaliation in violation of Title VII of the Civil Rights Act of 1964 and Oklahoma's Anti-Discrimination Act. Specifically, Plaintiff complains that Defendant terminated Plaintiff's employment because she is transgender and because she is Middle Eastern by descent and was raised in Canada. Plaintiff also claims that Defendant's termination of Plaintiff constituted retaliation against Plaintiff for filing a Grievance. Plaintiff is seeking monetary damages.

## STATEMENT OF FACTS

Defendant admits the following facts for the purpose of this motion only. These facts are based upon the pleadings, interrogatories, depositions and discovery.

1. Plaintiff was hired by Defendant as a Revenue Compliance Officer I. Plaintiff began her employment on October 8, 2014.

2. Plaintiff was hired on a twelve month probationary period pursuant to Oklahoma's Merit Protection Rules.

3. Plaintiff was assigned to work in the Notice to Show Cause section within Defendant's Compliance Division.

4. During her employment with Defendant, Plaintiff's supervisor was Sharita Ramsey. Her co-workers included Matresa Eisenberger and Tajuana Henderson.

5. On or about December 26, 2015, an incident occurred between Eisenberger and Plaintiff. In discussing the status of a taxpayer's file, Eisenberger was unable to understand what was said by Plaintiff. Plaintiff believed Eisenberger was "making fun" of the way Plaintiff talked. As a part of resolving the problem, Plaintiff was instructed, by her supervisor, on what information should be recorded in a written note for the file.

6. On or about February 3, 2015, Plaintiff and Henderson had a conversation, the contents of which are disputed. Plaintiff alleges Henderson told her "you're not even female" and "just go home and get naked, stand in front of the mirror and just say I like my body." Henderson denies saying Plaintiff is not a woman, and she denies telling Plaintiff to stand in front of a mirror naked. Henderson alleges

2

that the statements she did make to Plaintiff were intended to convey that Plaintiff needed to be strong and confident of herself.

7. Around February 6, 2015, Plaintiff complained to the Human Resources Division that she had been offended by Henderson's comments. At the request of the Human Resources Division, Plaintiff memorialized her complaint in a memorandum addressed to Tim Spradlin, Ramsey's supervisor.

8. Defendant alleges that once Plaintiff assumed the full duties of her job, work performance problems became apparent.

9. On March 9, 2015, Ramsey gave Plaintiff a memorandum documenting Plaintiff's work performance issues related to placing comments on show cause accounts.

10. Also on March 9, 2015, Ramsey gave Plaintiff a memorandum documenting Plaintiff's work performance issues related to the scanning of accounts.

11. On March 17, 2015, Ramsey gave Plaintiff a memorandum which documented that even though Plaintiff had been directed to seek assistance from co-workers within her section, Plaintiff continued to ask others outside the section for training.

12. On March 30, 2015, six months after Plaintiff's employment began, Defendant conducted Plaintiff's mid-year review, referred to as a Performance Management Process ("PMP").

13. With respect to all five of the Critical Accountabilities on the PMP, Plaintiff received ratings of either "needs improvement" or "does not meet" standards. The accountabilities addressed areas such as the handling of phone calls,

communicating with taxpayers, documenting case information electronically and the proper execution of necessary paperwork.

14. Plaintiff received ratings of "does not meet standards" in three of the four applicable Behaviors on the PMP, which included customer service orientation, teamwork and problem-solving initiative.

15. Plaintiff's overall performance rating on the PMP was "does not meet standards."

16. On April 20, 2015, following the unfavorable PMP, Plaintiff filed a Grievance with Defendant. In the Grievance, Plaintiff alleged "harassments, detrimental treatment, abuse, fabricated allegations, intimidations, retaliation", citing "offensive remarks" by Eisenberger and Henderson and Ramsey's unfavorable PMP of Plaintiff as the basis for her filing.

17. James Fourcade, Director of the Compliance Division, was tasked with investigating the merits of Plaintiff's Grievance allegations. After his investigation, which included numerous interviews, Fourcade determined there were no findings to support Plaintiff's claims, and he denied the Grievance.

18. In a memorandum dated May 12, 2015, Grievance Manager Missy Cain notified Plaintiff that Fourcade had investigated her Grievance and attached a copy of Fourcade's report. In Cain's memorandum, Plaintiff was advised to consult the Merit Protection Rules for guidance on filing an appeal. Plaintiff signed the memorandum on May 14, 2015.

19. Plaintiff did not appeal the denial of the Grievance.

20. In a memorandum dated June 15, 2015, Ramsey recommended to Spradlin that Plaintiff be terminated because she failed to demonstrate the ability to work independently, had difficulty communicating with taxpayers and co-workers, and failed to prepare case files in a timely manner.

21. By letter dated June 22, 2015, Jack Dobbins, Deputy Director of the Compliance Division, terminated Plaintiff's probationary employment. Dobbins stated that Plaintiff was terminated for failure to demonstrate fitness for the position for which she was employed.

22. Plaintiff filed an action with the Equal Employment Opportunity Commission ("EEOC") on August 18, 2015 reiterating the claims made herein and alleging Defendant's actions constituted discrimination and retaliation. Defendant responded to the complaint maintaining that it had neither discriminated nor retaliated against Plaintiff.

23. Via a letter dated February 16, 2016, the EEOC announced its decision to dismiss the Plaintiff's charge. The EEOC stated that, based on its review of the evidence, it did not believe that Plaintiff could establish that the employer had discriminated against her. Further, the EEOC found that the evidence indicated that Plaintiff was discharged due to her failure to abide by the training, policies and procedures given to her during her probationary period. The EEOC also noted that the Grievance she filed with Defendant was unsubstantiated due to witness statements from several employees who observed the alleged discriminatory activity.

24. On or about August 26, 2015, Plaintiff filed a tort claim against Defendant based on the allegations discussed herein.

25. On December 18, 2015, the State of Oklahoma, through its Office of Management and Enterprise Services, denied the Plaintiff's tort claim.

26. Plaintiff filed the instant action on April 1, 2016.

## ARGUMENT & AUTHORITY

### SUMMARY JUDGMENT STANDARD

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Fath v. Drive Clean Mgmt., LLC*, 121 F. Supp. 3d 1196, 1199 (N.D. Okla. 2015), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505 (1986); *Kendall v. Watkins*, 998 F.2d 848, 850 (10th Cir. 1993). Where a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, granting summary judgment is mandatory. *Celotex* at 317.

Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348 (1986). The appropriate inquiry by the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. at 250 (1986). Additionally, "[t]he mere

6

existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Id.* at 252.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM OF GENDER DISCRIMINATION SHOULD BE GRANTED.

Plaintiff cannot prove gender discrimination either directly or indirectly. Courts have held that discrimination may be proven either by direct evidence or by circumstantial evidence. To prove her discrimination claim through direct evidence, the Plaintiff must provide "evidence, which if believed, proves the existence of a fact in issue without inference or presumption." *Hall v. U.S. Dep't of Labor, Admin. Review Bd.*, 476 F.3d 847, 854 (10th Cir. 2007), citing *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1207 (10th Cir. 1999).

Plaintiff has not established any direct evidence to show that Defendant intentionally discriminated against her. At her deposition, Plaintiff described the single conversation between her and a co-worker which she believes substantiates her gender discrimination claim:

> Q Okay. Who was the first employee that you told you were transgender?
> A Verbally, I did not say to anyone, but --
> Q Did you say -- you said verbally you didn't say that to anyone. Did you communicate it some other way to anyone else?
> A I cannot -- I cannot say for other people what they thought, but my impression was from Tajuana she volunteered herself and she said she knows. She told me.
> Q What did she say when she told you?
> A She come back, she said, I can read people, I know, I have that ability, and she gave me example. She said Sherley wearing the different type of the lipstick and because I find out she's Indian and she explained like that. Then she come back

7

> and said, I know about you, I can read about you. I can tell you what is going on about you. And she explained and she said that. And then she said you're not even female, you are more emotional than me. Why are you so skinny, don't worry about your body. And, you know, I know what are you, just go home and get naked, stand in front of the mirror and just say I like my body. And, you know -- you know, that's what she said, you know, I know about you. And I know that's what she told me.
> Q  Did she say I know that you are a transgender?
> A  She said, I know you're not female and just go like your body and go -- it doesn't matter, just go, again, get naked in front of the mirror. And that offended me. And so she was volunteer, I did not tell anyone.

(Taghavi Deposition, 66:5–67:12, Dec. 23, 2016)

\*\*\*

> Q  You said that you didn't verbally tell anyone that you were transgender. Does that mean you did communicate that to people you worked with some other way than verbally?
> A  No, no, I did not. Because my job was to do my job, not go around tell about my gender.

(Taghavi Dep., 67:16–21)

Plaintiff admits that she did not even tell anyone at the workplace that she was transgender. It is Plaintiff's "impression" that her co-worker, Tajuana Henderson, knew of her status. Plaintiff interprets comments that she claims Henderson made as showing that Henderson knew she was transgender. It is important to note that Henderson denied saying that Plaintiff is not a woman:

> Q  Uh-huh. If Ms. Taghavi claimed that you had made at some point a statement that she was not even a woman, but was more emotional than women are, would you disagree with that?
> A  I would disagree. I would disagree with that.

(Henderson Deposition, 29:4–9, Dec. 13, 2016)

8

Even if one assumes, for the sake of argument, that Henderson made these comments, it is not sufficient direct evidence to find discrimination occurred. Henderson was not in a position to terminate Plaintiff's employment and thus could not have taken adverse action against Plaintiff. Further, no evidence has been produced to show that if Henderson knew Plaintiff was transgender, she shared that knowledge with any employee of Defendant who did have the ability to terminate Plaintiff's employment.

Even if one believed these statements were made and one interpreted the alleged statements "you're not even female" and "I know you're not female" to mean that Henderson knew Plaintiff was transgender, these statements are not direct evidence of discrimination. As stated by the 10th Circuit in *E.E.O.C. v. Wiltel, Inc.*, "statements of personal opinion, even when reflecting a personal bias or prejudice, do not constitute direct evidence of discrimination." *E.E.O.C. v. Wiltel, Inc.*, 81 F.3d 1508, 1514 (10th Cir. 1996), citing *Heim v. State of Utah*, 8 F.3d 1541, 1546–47 (10th Cir. 1993) (manager's remark that "I hate having fucking women in the office" was not direct evidence of discriminatory intent); *Ramsey v. City and County of Denver*, 907 F.2d 1004, 1008 (director's "feelings about women being better suited to some jobs than others" was not direct evidence of discriminatory intent); *Furr v. AT & T Technologies, Inc.*, 824 F.2d 1537, 1547, 1549 (10th Cir. 1987) (managers' statements that a plaintiff could not be promoted because "he was too damned old," and that other plaintiffs were too old to learn new technologies necessary to promotion and too old to be in supervisory or management positions was not direct evidence of discriminatory intent), reh'g denied, 842 F.2d 253 (1988).

Where there is no direct evidence of discrimination, the plaintiff may attempt to prove its claim through circumstantial evidence. In doing so, the plaintiff has the initial burden of establishing the elements of a prima facie case sought to be proven through circumstantial evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973). In a case where the plaintiff alleges wrongful termination, the elements of a prima facie case are:

1. Plaintiff belonged to a protected class;

2. Plaintiff was qualified for the position;

3. Plaintiff suffered an adverse employment action; and

4. Defendant treated similarly-situated employees outside Plaintiff's protected class more favorably than he was treated.

*Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999)

In the instant case, Plaintiff cannot meet the burden of proving, through circumstantial evidence, that one of the motivating factors for her termination was her transgender status. In *Goldberg v. B. Green & Co.*, 836 F.2d 845 (4th Cir. 1988), the court found that merely the conclusions of the plaintiff were not enough to sustain the plaintiff's burden. The court noted that to meet his burden, the plaintiff was required to "produce direct evidence of a stated purpose to discriminate and/or circumstantial evidence of sufficient probative force to reflect a genuine issue of material fact." *Id.* at 848. Plaintiff's opinion that the alleged statements by Henderson constitute discrimination does not suffice for proof of a discriminatory act by Defendant. "A plaintiff's own self-serving opinions, absent anything more, are insufficient to establish a

10

prima facie case of discrimination." *Mackey v. Shalala*, 360 F.3d 463, 469–70 (4th Cir. 2004)

Plaintiff also fails to establish a prima facie case with respect to the first element of the McDonnell Douglas scheme, wherein Plaintiff must show that she is a member of a protected class. In many discrimination cases, the plaintiff's membership in a protected class is obvious to the employer. However, in cases "involving personal attributes not obvious to the employer, courts have regularly held that the plaintiff **cannot** make out a prima facie case of discrimination **unless** he or she proves that the employer **knew** about the plaintiff's particular personal characteristic." *Geraci v. Moody-Tottrup, International, Inc.*, 82 F.3d 578, 581 (3rd Cir. 1996) (emphasis added). Moreover, "it is counter-intuitive to infer that the employer discriminated on the basis of a condition of which it was wholly ignorant, and in this situation the bare McDonnell Douglas presumption no longer makes sense." *Id.*

Here, Plaintiff states she is transgender[1]. She admits that she did not tell anyone at the workplace of her status. (Taghavi Dep., 66:5–14, 67:16–21) It is her "impression" that Tajuana Henderson knew Plaintiff was transgender. (Taghavi Dep., 66:11–14) Consistent with *Goldberg*, Plaintiff's conclusion that a co-worker had knowledge of her status is not enough to sustain her burden of establishing a prima facie case.

---

[1] Defendant acknowledges that the Equal Employment Opportunity Commission held, in *Macy v. Holder*, No. 0120120821, 2012 WL 1435995 (E.E.O.C. Apr. 20, 2012), that claims of transgender discrimination are cognizable under Title VII of the Civil Rights Act; however, the Tenth Circuit has yet to find accordingly. In fact, in *Etsitty v. Utah Transit Authority, et al.*, 502 F.3d 1215 (10th Cir. 2007), the court affirmed the Court of Appeals decision that discrimination based on a person's status as a transsexual was not discrimination "because of sex" under Title VII.

11

Furthermore, even if one assumed Henderson did know of Plaintiff's status, no evidence has been produced to show that those alleged of participating in the adverse employment action had knowledge of Plaintiff's status. Plaintiff's status as a transgender person is not obvious, thus it would be unreasonable to presume that Defendant knew of Plaintiff's status.

## CONCLUSION

No direct evidence has been produced through which Plaintiff can prove gender discrimination. Statements alleged to have been made by a co-worker do not constitute direct evidence of discrimination. Plaintiff has also failed to show sufficient circumstantial evidence to establish a prima facie case of gender discrimination. Plaintiff's failure to produce evidence that Defendant had knowledge of Plaintiff's transgender status mandates the granting of summary judgment. Accordingly, Defendant's Motion for Partial Summary Judgment should be granted.

Respectfully Submitted,

OKLAHOMA TAX COMMISSION

*(signature)*

Lee Pugh, OBA #15829
Marjorie L. Welch, OBA #11007
Mary Ann Roberts, OBA #17405
100 North Broadway Avenue, Suite 1500
Oklahoma City, Oklahoma 73102
Telephone: (405)522-9460
Facsimile: (405)601-7144
lee.pugh@tax.ok.gov
jwelch@tax.ok.gov
maryann.roberts@tax.ok.gov
*Counsel for Defendant*

13

## CERTIFICATE OF SERVICE

This is to certify that on the 9th day of January, 2017, a true and correct copy of the above and foregoing *Defendant's Motion for Partial Summary Judgment* was mailed, postage prepaid thereon, and emailed by the undersigned, to the following:

Mark Hammons
Amber L. Hurst
Leah M. Roper
HAMMONS, GOWENS, HURST & ASSOCIATES
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
leah@hammonslaw.com
*Counsel for Plaintiff*